JAMES M. HAGAR vs. NEW ENGLAND MUTUAL MARINE INSURANCE COMPANY.

*Peril of the sea—what is.    Master—carelessness of, no defense.    For what injury underwriters are liable.*

The liability of vessels moored in tide harbors, as the tide ebbs, to take the ground in a mal-position, or to strike their bottoms against some hard substance, and to be thereby injured, is one of the perils of the sea for which underwriters are responsible.

The fact that the ship was brought into such a peril through the negligence of the master, and thereby injured, will not deprive the plaintiff of the benefit of his insurance, if he himself were not guilty of carelessness.

Where a marine policy on a vessel stipulates that the underwriter shall not be liable for any partial loss, unless it amount to five per cent, exclusive of all charges for ascertaining and proving the loss, two or more distinct losses cannot be added together to make up that amount.

But the plaintiff's right to recover is not limited to the amount actually expended for repairs, after deducting one-third new for old; for where by the perils insured against a vessel receives a strain which so alters her shape that she cannot be perfectly repaired without rebuilding her, and her value is thereby diminished, the underwriters are liable for such diminished value in addition to the expense of repairs, although the vessel is made seaworthy by the repairs, and is afterwards insured at the same premium and the same valuation as before.

ON REPORT.

ASSUMPSIT on a policy issued to the plaintiff, by the defendants, on ship "Ida Lilly," for one year from January 5, 1866, for the

sum of eight thousand dollars, the insurers not to be "liable for any partial loss on the vessel unless it amount to five per cent, exclusive of all charges and expenses incurred for the purpose of ascertaining and proving the loss."

There was evidence tending to show that the "Ida Lilly," then in good condition, tight and strong, arrived at Charleston, S. C., in August, 1866, from Liverpool, with a full cargo, where at the end of the wharf she was delivered over to a new master by her former one; that the mate, under the directions of the master, hauled her from the end of the wharf around and alongside into the slip of the dock; that she was then tight; that she was hauled up as far as she could go at high water; that as the tide fell off she seemed to lay aground from forward along rather abaft midships, water deep enough to float her any time from midships aft; that she lay so for several days before being discharged of her cargo; that she began to leak before she was half discharged; that some repairs were made, but the leak was not found; that she sailed November, 1866, with cotton to Liverpool, arriving December, common passage; that she lay afloat in a good dock forty days, thence sailed February, 1867, with coal to Havana, thence to Greenock, where she was taken out and found to be hogged, and thence to New York; that she had never touched bottom since she left Charleston; that along next the wharf in Charleston, where she lay, were some old logs from the wharf worked out and her bilge seemed to lay against them, a little abaft midships; that her copper wrinkled diagonally, indicating that she had laid on a hard substance.

It appeared the plaintiff left the bills with the president of the defendant company, amounting to $227 at Charleston, $67 at Liverpool, $50.58 at Havana, $910 at Greenock, $2,600 at New York.

The vessel registered 750 tons and was insured for $45,000. If the action was maintainable on so much of the evidence as was admissible, it was to stand for trial.

*Tallman & Larrabee*, for the plaintiff.

*A. Libbey*, for the defendants.

The hogging of the ship by taking the ground in her berth by the ordinary ebb of the tide is not a peril of the sea.

The phrase, perils of the sea, covers all losses or damage that arise from the extraordinary action of the wind and sea. 1 Pars. on Mar. Ins. 544; *Bullard* v. *Roger Williams Ins. Co.*, 1 Curtis C. C. 148.

When a vessel, moored in a tide-harbor, takes the ground when the tide falls, and by reason thereof is hogged or strained all over, this is not a peril of the sea, and the underwriters are not liable. *Magnus* v. *Butterner*, 9 Eng. L. & Eq. 461. See also, *Thompson* v. *Whitmore*, 3 Taunt. 227; *Bancroft* v. *Dinsmore*, cited in the last-named; *Phillips* v. *Barber*, 5 B. & Ald. 161.

But if taking ground by the ordinary action of the tide is a peril of the sea, the damage was caused by the negligence of the master in hauling the ship as far as he could at high-water, and keeping her there heavily laden. The peril was not the sole proximate cause. *United States* v. *Hall*, 6 Cranch, 171; *Dyer* v. *Piscataqua Ins. Co.*, 53 Maine, 118.

" The very object of insurance is to indemnify against losses which may occur to men who conduct themselves with honesty and ordinary prudence." *Thompson* v. *Hopper*, 88 E. C. L. 950; 38 L. & Eq. 45.

The loss chargeable to the insurers in this case does not amount to five per cent. In partial loss the damage by one peril of the sea must amount to five per cent. Damage by two or more perils cannot be aggregated to make up the five per cent. *Brooks* v. *Oriental Ins. Co.*, 7 Pick. 258.

WALTON, J. Action on a marine insurance policy. The plaintiff's right to recover is resisted on several grounds. First, it is said that the plaintiff's ship was not injured by a peril of the sea. Second, that it would not have been injured but for the carelessness of the master. Third, that no one of the losses alone amounted to five per cent of the valuation of the ship, and that two or more losses by separate and distinct perils cannot be added together to make up that amount.

1. All ships moored in tide-harbors are liable, as the tide ebbs, to take the ground in a mal-position, or to strike their bottoms against some hard substance, and to be thereby injured. This danger constitutes one of the perils of the sea for which underwriters are responsible. *Potter* v. *Ins. Co.*, 2 Sum. 197.

2. It is no defense to an action for such an injury that the ship was brought into peril through the carelessness of the master. If the plaintiff himself was not guilty of carelessness, the negligence of his servants will not deprive him of the benefit of his insurance. So settled both in England and in this country. The question is thoroughly examined in *Copeland* v. *Ins. Co.*, 2 Met. 432, and *Mathews* v. *Ins. Co.*, 1 Kernan (11 New York), 9.

3. It is true the plaintiff cannot recover unless his loss amounts to five per cent of the valuation of the ship, exclusive of all charges for ascertaining and proving the loss; for such is the express language of the policy. It is also true, that two or more distinct losses cannot be added together to make up that amount. *Paddock* v. *Ins. Co.*, 104 Mass. 521; *Brooks* v. *Ins. Co.*, 7 Pick. 258.

But the plaintiff's right to recover is not limited to the amount actually expended for repairs, after deducting one-third new for old. Where, by the perils insured against, a vessel receives a strain which alters her shape so that she cannot be perfectly repaired without rebuilding her, and her value is thereby diminished, the underwriters are liable to the extent of such diminished value, in addition to the expense of repairs, although the vessel is made seaworthy by the repairs, and is afterward insured at the same premium and at the same valuation as before the injury. So held in *Giles* v. *Ins. Co.*, 2 Met. 140.

Whether the plaintiff will be able to bring his case within these principles is a question in relation to which we express no opinion. We think the evidence is sufficient to entitle him to have it submitted to a jury. *Action to stand for trial.*

APPLETON, C. J.; KENT, BARROWS, and TAPLEY, JJ., concurred.