JERRY PETRIE, Respondent, *v.* THE PHENIX INSURANCE COMPANY of Brooklyn, Appellant.

O. & Co., who were insurance brokers and defendant's agents, issued to P., a forwarder in New York city, a "Uniform Canal Cargo Policy" of insurance, by which defendant agreed to insure the several persons whose names were indorsed thereon, or in a book provided for that purpose; no risk to be considered as insured unless the indorsement was approved and signed by the company or its authorized agents. A book was delivered with the policy, ruled in columns with printed headings, one being "Signature of Approval." In an action upon the policy, plaintiff's evidence was to the effect that by the course of business between P. and O. & Co., a cargo to be insured was entered by P. in this book, which was sent to O. & Co. for their approval. When the risk was taken for "the harbor of New York," the approval was denoted by the word "harbor" written in that column opposite the name of the assured and the boat or vessel insured. P., having loaded a canal boat, entered in said book the name of the boat, description of cargo, etc., and sent it to O. & Co., who wrote the word "harbor" in said column. Defendant's evidence was to the effect that the word "harbor" indicated an acceptance of the risk by insurers other than defendant, but that the

insured had not been advised that such risks were not taken by defendant, and the insured had no other open policy or book. *Held,* that the evidence justified a finding that the risk was accepted by defendant.

It appeared that during the season when this risk was taken, which was upon a cargo of cement, P. had been engaged in forwarding cargoes of cement to various points in the upper part of the harbor of New York, on the Harlem river and at Tarrytown. All of these cargoes had been insured through O. & Co. under the policy in question. In such cases the places of destination were not entered, but under columns in the book headed "from" and "to," the shipments were indicated by the words "from New York to harbor." Opposite the name of the boat in question in the column "from" was written, "from New York harbor," the last word extending into the column headed "to." *Held,* that, under the circumstances, the contract was not so indefinite and uncertain as to render it void.

The cargo in question was shipped to Tarrytown. Evidence on behalf of plaintiff was offered and received to the effect that the term "harbor of New York," as used in the business of insurance, included Tarrytown and other points in the New York custom-house district. *Held,* that the evidence was competent.

The canal boat arrived safely at Tarrytown and was moored alongside a dock; when the tide went out it grounded and was so injured that it sank and the cargo was destroyed. It appeared that the boat was seaworthy when laden. The perils insured against were "of the seas, canals, rivers," etc. *Held,* that the loss was within the perils insured against.

*Berwind* v. *G. Ins. Co.* (114 N. Y. 231), distinguished.

(Argued February 5, 1892; decided March 8, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made July 18, 1890, which affirmed a judgment in favor of plaintiff entered upon a verdict and affirmed an order denying a motion for a new trial.

This was an action to recover for the loss of a cargo of cement underwritten by defendant.

April 26, 1886, the defendant issued to Sherman Petrie an open uniform canal cargo policy, by which it undertook to "insure the several persons whose names are hereafter indorsed hereon as owner, advancer or common carrier on goods * * * on his own boat, or boats belonging to others, loaded on commission or chartered. From place to place, as indorsed

hereon, *or in a book kept for that purpose,* at the rate and on the goods   *   *   *   as specified in the said indorsement." The policy contained these clauses : " No risk considered as insured· under this policy until said indorsement is approved and signed by this company, or its duly authorized agents, at New York, unless with special agreement with the company and indorsed hereon.

" Beginning the adventure upon the goods   *   *   *   from and immediately following the lading thereof, at the port or place, indorsed as aforesaid, and continue the same until the said goods   *   *   *   shall be safely landed at the port of destination as aforesaid.

" Touching the adventures and perils which the said insurance company is contented to bear and take upon itself on said trip or voyage, they are · of the seas, canals, rivers and fires, and all other perils, losses or misfortunes that shall come· or happen to the hurt, detriment or damage of the said goods·   *   *   *   laden on board of said boats on the voyage or trip aforesaid," excepting certain perils and losses which do not include the misfortune which happened to the boat in question..

It was also provided in the policy that in case of loss " and within thirty days from the time the same may happen, the· said insured shall deliver to said company as particular an account thereof as the nature of the case will admit." Also, " that no suit or action against this company for the recovery of any claim upon, under or by virtue of this policy shall be· sustainable in any court of law or chancery unless such suit or action shall be commenced within the time of twelve months· next after such loss or damage shall occur."

With the policy a book was delivered to the insured, ruled in columns and having the following printed headings :

" Date ; Account of ; Vessel or Boat ; From ; To ; Cargo ; Amount ; Premium ; Signature of Approval."

Sherman Petrie was a forwarder engaged in business at 142 Broad street, New York. W. M. Onderdonk & Co. were insurance brokers, agents of defendant, and engaged in business at Nos. 1 and 3 Beaver street, New York. By the course

of business between Petrie and W. M. Onderdonk & Co. the cargoes laden on boats were entered by Petrie or his clerk in this book, which was sent daily to W. M. Onderdonk & Co., and they approved or disapproved of the risk so offered. Their approval was indicated by entering in the column headed "Signature of Approval" the number of the page of their own book in which the risk was entered. This was the usual form of approval, but when risks were taken for "the harbor of New York" the approval of the agents was denoted by the word "harbor" written in the column headed "Signature of Approval."

The premiums were fixed by the insurance agents and charged to Petrie, who paid them monthly. October 17, 1887, Petrie loaded tho canal boat "C. L. Abel" with one thousand barrels Portland cement, and on that day entered in the columns of his insurance book: "Date, Oct. 17, 1887; Account of Sherman Petrie; Vessel or Boat, C. L. Abel; From New York harbor; To blank (except as the word 'harbor' extended into that column); Cargo, cement; Amount, $2,500; Premium, no entry; Signature of Approval, no entry," and sent the book to W. M. Onderdonk & Co. on the same or the next day, and thereupon they wrote the word "harbor" in the column headed "Signature of Approval," and returned the book to Petrie. The boat left Brooklyn October 19, 1887, and reached Tarrytown, its destination, the next morning, where later in the day it sank at its dock. The sinking was caused by the tide going out and grounding the boat at about its center, which caused it to break in two, so that it filled with water and destroyed the cargo. This action was brought December 1, 1888, to recover this loss. The defenses interposed were: (1) That the defendant did not insure the risk. (2) That a valid contract to insure was not entered into because the duration of the risk was neither measured by time nor termini of the voyage. (3) That the loss was not occasioned by the perils insured against. (4) That proofs of loss were not furnished within thirty days. (5) That the action was not begun within twelve months after the happening of the loss.

*Joseph F. Mosher* for appellant.    The risk was never approved by the defendant or its agents, and the motion to dismiss on this ground was improperly denied. (*Hortshorn* v. *S. & L. D. Ins. Co.,* 15 Gray, 240.)    The court erred in charging the jury that if, as claimed by Petrie, the entry in the open policy book, " simply stated that the point of departure was from New York harbor, and did not specify where the voyage was to terminate, if the defendant chose to accept such a risk, it was within their power to do so," and the insurance was valid; and the exception to this part of the charge was well taken. (*Abeel* v. *Redcliff,* 13 Johns. 287; *Roland* v. *Pickett,* 2 Hill, 552; *B. Church* v. *B. F. Ins. Co.,* 28 N. Y. 153; *Manley* v. *U. M. & F. Ins. Co.,* 9 Mass. 85; *Tyler* v. *N. A. F. Ins. Co.,* 4 Robt. 151; *De Grove* v. *M. Ins. Co.,* 61 N. Y. 594, 601, 602; *Clark* v. *Brand,* 62 Ga. 23; *Strong* v. *H. F. Ins. Co.,* 37 Wis. 625; *Schaefer* v. *B. M. Ins. Co.,* 33 Md. 109.)    The court erred in excluding the question asked the witness Baker, as to what the words " New York" and "harbor" in the entry of the risk would indicate to an insurance man as to the terminus of the risk. (*Nelson* v. *S. M. Ins. Co.,* 71 N. Y. 453; *Bissill* v. *Campbell,* 54 id. 353; 1 Phil. on Ins. [5th ed.] § 144; *Astor* v. *U. Ins. Co.,* 7 Cow. 202; *Child* v. *S. M. Ins. Co.,* 3 Sandf. 26; *Dow* v. *Whitton,* 8 Wend. 160.)    No loss within the perils insured against was proved, and the motion for a nonsuit on that ground was improperly denied. (*Van Wickle* v. *M. & T. Ins. Co.,* 97 N. Y. 350; 16 J. & S. 95; *Wright* v. *O. M. Ins. Co.,* 6 Bosw. 269; 97 N. Y. 354; *Berwind* v. *G. Ins. Co.,* 114 id. 231; *Talcott* v. *C. Ins. Co.,* 2 Johns. 124; *Prescott* v. *U. Ins. Co.,* 1 Whart. 399, 400, 407; *Rugley* v. *S. M. Ins. Co.,* 7 La. Ann. 279, 282.)

*Edwin G. Davis* for respondent.    The risk was assumed by the defendant. (*Ruggles* v. *A. C. Ins. Co.,* 114 N. Y. 415; *Garner* v. *F. F. Ins. Co.,* 35 N. W. Rep. 584; *N. F. O. Co.* v. *C. Ins. Co.,* 106 N. Y. 535; *Hartshorne* v. *U. M. Ins. Co.,* 36 N. Y. 172; *Hancox* v. *Fishing Co.,* 3 Sumn. 132;

*Savage* v. *C. E. Ins. Co.*, 36 N. Y. 655.) It was a valid risk and not confined to the harbor. (14 Am. & Eng. Ency. of Law, 334.) This was not a case in which the rule that "it is incumbent upon the plaintiff to prove the seaworthiness of the vessel" should apply, because the boat had reached her place of destination and the loss of the cement occurred through her stranding and straining, and no one had ever suggested anywhere that the boat was unseaworthy. (*Earnmoor* v. *C. Ins. Co.*, 40 Fed. Rep. 847; *Lunt* v. *Ins. Co.*, 6 id. 562.) Whether or no the defendant waived certain conditions of the policy was a question of fact for the jury, and upon sufficient evidence was properly submitted. (*Ames* v. *N. Y. U. Ins. Co.*, 14 N. Y. 253; *D. H. Ins. Co.* v. *Brodie*, 11 S. W. Rep. 1016; *Uhbrig* v. *W. C. F. Ins. Co.*, 101 N. Y. 362; *Rehberg* v. *Mayor, etc.*, 91 id. 137; *O'Brien* v. *P. Ins. Co.*, 76 id. 459; *Short* v. *H. Ins. Co.*, 80 id. 16; *Smith* v. *M. & T. Ins. Co.*, 39 id. 399; *Wyncoop* v. *N. Ins. Co.*, 91 id. 478; *B. F. Ins. Co.* v. *Pulver*, 18 N. E. Rep. 804; *Mayor, etc.*, v. *H. F. Ins. Co.*, 39 N. Y. 46; *P. F. Ins. Co.* v. *Pulver*, 20 N. E. Rep. 18; *Goodwin* v. *M. M. L. Ins. Co.*, 73 N. Y. 480.)

FOLLETT, Ch. J. The question which meets us at the threshold of this discussion is, was the evidence sufficient to justify the submission of the question, whether the defendant's agents approved of the application for this insurance? The authority of W. M. Onderdonk & Co. to bind the defendant by indorsing in the book in any form their approval of the risk proposed is not denied. Six days before the entry in question the insured entered on the same book an application for insurance on the boat "Delia McKeever" for $2,500 on cement, New York harbor, which was approved by writing the word "harbor" in the column designated "Signature of Approval." The insured testified that other risks were approved by the entry of the word "harbor" in the approval column. A clerk of the insurance brokers, who was sworn in behalf of the defendant, testified that he wrote the word

"harbor" opposite this application and the same word in the same book against other applications for insurance, and that it indicated an acceptance of the risk by insurers other than the defendant. The witness also testified that he never informed the insured that the word "harbor" indicated that the risk was not taken by defendant, but by some other company, and that the insured had no other open policy and book, except these issued by defendant. The assured testified that these brokers did all of his insurance, that he always applied for it in the same way, by entering the proposed risk in this book and sending it to the agents for their approval, who usually returned certificates of insurance executed by the defendant, and that he never had received any from any other company. This state of the evidence justified the court in submitting the question of the acceptance of the risk by the defendant to the jury and its verdict must be regarded as final upon this question.

Was the contract of insurance void because the duration of the risk was not fixed by time nor for a voyage between specified places? Ordinarily, marine contracts of insurance not specifying the duration of the risk either by time or by the places at which the voyage insured is to begin and end, is void for uncertainty. (Molloy Bk. 2 C. 17, § 14; 2 Par. Mar. L. 311; 1 Phil. Ins. § 918; 1 Arn. Mar. Ins. [6th ed.] 236; *Manly* v. *United M. & F. Ins. Co.*, 9 Mass. 85.)

The undisputed evidence is that during the season of 1887 the assured had been engaged in forwarding cargoes of Portland cement to the contractors engaged in extending the Croton water supply, which were delivered at various points in the upper part of the harbor of New York, on the Harlem river and at Tarrytown. It was the custom of the contractors to direct the assured to load five or six thousand barrels on boats, and subsequently designate the places at which they should be unloaded. That in such cases the place of destination could not be entered in the book, and that the words "from New York to harbor" indicates such shipments. The assured also testified that all of these cargoes had been insured through

these agents by the defendant under the policy put in evidence and by entries on the book, made as in this instance. Under such a practice an insurance on a cargo to be delivered at some place in the same port would not be so indefinite and uncertain as to render the contract void, both parties understanding what was meant by the term. Did the loss occur in that harbor? It was competent to receive evidence as to the meaning, in the business of insurance, of the term "harbor of New York." (*Nelson* v. *Sun Mutual Ins. Co.*, 71 N. Y. 453.) Upon this issue there was evidence that the term "harbor of New York," as used in the business of marine insurance, included Tarrytown and other points within the New York custom house district. Other witnesses testified that the harbor of New York did not extend above Spuyten Duyvil, and did not include Tarrytown. This question was submitted to the jury and found for the plaintiff. No available error is presented by the ruling on the question put to the witness Baker, because he was subsequently permitted to testify as to the meaning of the words "New York to harbor," and fully as to all facts called for by the question.

It is insisted that the loss was not within the perils insured against. The evidence is that the "Abel" was loaded at the Anglo-American stores, Brooklyn, N. Y., October 19, 1887, and left that place at 8 o'clock P. M. of that day in a tow bound for Tarrytown, where it arrived at 1 o'clock the next morning. The boat was moored alongside of the dock, and when the tide went out it grounded, and was so broken or strained that it sank and the cargo was destroyed. It was testified that the boat was seaworthy when laden, which evidence was not disputed. This case does not fall within the class of cases of which *Berwind* v. *Greenwich Ins. Co.* (114 N. Y. 231) is a type. In that case the boat sprung a leak and sank without any known cause. It was held that this raised a presumption that it was unseaworthy, but that this presumption might have been rebutted by showing that the loss was occasioned by some other cause than the unseaworthiness of the boat. This was precisely what was done in this case.

Whether the defendant had waived the requirement in the policy, that formal proofs of loss should be furnished within thirty days and an action brought within twelve months after a loss, was submitted to the jury and was found for the plaintiff. No point is made by the learned counsel for the appellant that the evidence was insufficient to sustain the verdict on these issues.

But two exceptions were taken to the instructions given by the court, and neither of them was argued by the learned counsel for the appellant.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.