PENNSYLVANIA R. CO. v. MANHEIM INS. CO.[1]

(District Court, S. D. New York. April 24, 1893.)

1. MARINE INSURANCE—CONDITIONS OF POLICY—CONSTRUCTION.

The policy of insurance on libelant's goods contained the following provision: "It is understood and agreed that in case any agreement be made by the assured with any carrier, by which such carrier stipulates to have, in case of any loss for which he may be liable, the benefit of this insurance, then, in that event, the insurers shall be discharged of any liability for such loss hereunder." The through bill of lading under which libelant's goods were transported contained this stipulation: "And any carrier by water, liable on account of loss of, or damage to, any of said property, shall have the full benefit of any insurance that may have been effected upon, or on account of, said property." *Held*, that the application of the clause in the policy must be confined to those cases, only, when the carrier was liable for the loss, and that the policy remained in full force as respects losses by sea perils, for which the carrier was not legally responsible.

2. SAME—DAMAGE TO LIGHTER—UNKNOWN OBSTRUCTION.

Where a lighter belonging to one carrier, a railroad company, loaded with libelant's goods, was directed by the employes of a second carrier, a steamship line, to move in a slip, and in so moving she grounded on a shoal in the slip, and was then pierced by a log, the existence of which was up to that time unknown, it was *held* that the damage was not caused by negligence of either of the carriers, and that the insurance company which had insured the cargo was liable.

In Admiralty. Libel by the Pennsylvania Railroad Company against the Manheim Insurance Company on policy of marine insurance. Decree for libelant.

Robinson, Biddle & Ward, for libelant.

Butler, Stillman & Hubbard, for respondent.

[1]Reported by E. G. Benedict, Esq., of the New York bar.

BROWN, District Judge. The above libel was filed to recover insurance upon a quantity of lard in tierces, upon a marine policy covering perils of the sea, issued by the respondent.

The lard was consigned to Rotterdam upon a through bill of lading issued by the Pennsylvania Railroad Company, which brought the lard by rail to Harsimus Cove, Jersey City, the termination of the railroad, and sent it thence by lighters to the pier of the Netherlands Line of steamers by which it was to be transported to Rotterdam. On the following day, March 11, 1892, the lighter, with several other boats, was directed by the employes of the line of steamers, to be moved out into the slip in order to make room at the dock for an incoming steamer of that line. The lighter containing the lard was the outer boat and was shoved upon a shoal or spit near the middle of the slip. The tide was falling, and in about an hour afterwards, when the boats were moved back towards the dock, the lighter was found to be fast; and she soon after careened, and dumped the lard in question overboard. Subsequent examination showed that a hole was stove through her bottom; and a log with a number of projecting spikes some 10 or 12 inches long, a piece of some wreck, was found on the shoal where the boat was injured. The stevedore who directed the removal of the boats, was aware of the shoal; but no one appears to have had any knowledge of the existence of any such obstruction as the log with spikes; nor is there any evidence when it came there or how long it remained.

The insurers and both carriers denied any liability for the accident; and the libelant finally made an arrangement to advance to the shipper the amount of the damage, and took an assignment of the claim against the insurance company, and filed the above libel.

The answer denies that the loss arose through any peril of the sea covered by the insurance policy; and it also sets up a special condition of the policy in the following words:

"It is understood and agreed that in case any agreement be made by the assured with any carrier by which such carrier stipulates to have, in case of any loss for which he may be liable, the benefit of this insurance, then in that event the insurers shall be discharged of any liability for such loss hereunder."

The through bill of lading provided for transportation by the Pennsylvania Railroad to New York and thence by the Netherlands American Line of Dutch steamers to the port of Rotterdam, and at the end of its tenth condition contained the following stipulation:

"And any carrier by water liable on account of loss of or damage to any of said property, shall have the full benefit of any insurance that may have been effected upon or on account of said property."

1. The first ground of defense evidently cannot be sustained. The loss was damage by sea water, arising, not in the ordinary course of grounding in the slip, but from careening consequent on the settling of the boat upon a dangerous log, not before known. This was an accident, such as occasionally arises in the ordinary

handling of lighters in the harbor, in course of transit; and in such transit as was contemplated both by the policy and by the bill of lading. Upon a loss happening in that way, it makes no difference, as between the insurer and the insured, whether the original grounding and settling on the log was by some one's negligence, or without negligence. The immediate and proximate cause of the loss as between the insurer and insured was a sea peril, covered by the policy. Potter v. Insurance Co., 2 Summ. 197; Insurance Co. v. Sherwood, 14 How. 351, 365, 366; Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 438, 9 Sup. Ct. Rep. 469; The Xantho, L. R. 12 App. Cas. 503, 510; Earnmoor S. S. Co. v. Union Ins. Co., 44 Fed. Rep. 376. If this approximate cause arose through anterior negligence, the insurers, on paying the loss, would have, by equitable subrogation, a claim for indemnity against the negligent party, if there were no contract with the carrier preventing such recourse against it.

The object of the clause above quoted from the policy is to retain unimpaired to the insurance company its right of indemnity over against any carrier whose negligence has caused the loss, or else to be "discharged of any liability for such loss." The carrier in taking the goods may stipulate to have the benefit of any insurance that the shipper may effect; and where this stipulation is made, as in this bill of lading, it defeats the insurer's right of indemnity against the carrier. Phoenix Ins Co. v. Erie & W. Transp. Co., 117 U. S. 312, 6 Sup. Ct. Rep. 750, 1176; California Ins. Co. v. Union Compress Co., 133 U. S. 387, 10 Sup. Ct. Rep. 365; Chicago, St. L. & N. O. R. Co. v. Pullman South. Car Co., 139 U. S. 79, 11 Sup. Ct. Rep. 490. The clause in the policy is to be interpreted with reference to this object. Its effect should not be extended by construction beyond its natural significance and presumed object. Its language is in fact fully satisfied by the construction that confines its application to those cases only where the carrier is liable for the loss. The words "such loss" necessarily mean a loss for which the carrier is liable. The policy, therefore, remains in full force as respects losses by sea perils to which the carrier has not contributed by any negligence, and for which he is in no way legally responsible. On any other construction the whole policy would become void by the simple taking of this bill of lading, although the loss might be wholly independent of any acts of the carrier.

In the present case, if the loss arose through negligence, it is immaterial whether the negligence was on the part of the railroad company, or of the line of steamers. For both were carriers and the stipulations of the bill of lading and of the policy apply alike to each. Hence if either is liable for this loss, the clause in the policy would become operative, and the insurers be discharged of liability for this particular loss.

But in order to make this clause operative, it is essential that the loss be shown to have arisen through the negligence of the one carrier or the other; and in the present case I do not think such negligence is established. The burden of proof is upon the

respondent. Northwest Transp. Co. v. Boston Marine Ins. Co., 41 Fed. Rep. 793, 797. The evidence is too meager to warrant a finding of negligence in the carrier. The grounding of such boats in the slips is not uncommon. This shoal was of mud and sand; it was known to the stevedore. No previous accident from grounding in the slip is shown. The kind of damage proved is not such as would naturally arise from grounding on a dangerous bottom, viz.: the twisting, the hogging or the breaking of the boat; but a hole through the bottom, such as would arise from the log with spikes found there the next morning. It was undoubtedly some accidental and recent accretion. There is no evidence of negligence in examining the slip, or that grounding in it was dangerous. No prior knowledge of this log is proved; nor any neglect of reasonable care. Accidents from such causes occasionally happen without negligence imputable to any one. Potter v. Insurance Co., 2 Sumn. 197; Bowring v. Thebaud, 42 Fed. Rep. 796. Upon the meager evidence on this subject, I do not think there is sufficient proof that the moving of the libelant's boat upon the shoal was in itself negligence; and consequently the case does not fall within the provision of the insurance policy above noted. Decree for the libelant for $255.63, with interest from November 1, 1892, and costs.