(31 Misc. Rep. 61.)

## McNALLY v. INSURANCE CO. OF NORTH AMERICA.

(Supreme Court, Special Term, Ulster County.    March 15, 1900.)

MARINE INSURANCE—PERILS OF THE SEA—INJURY TO BOAT IN TIDAL HARBOR —CONSTRUCTION OF POLICY.

A gully six feet wide and three feet deep, near the dock in a tidal harbor, through which there was a running stream, even at low tide, caused a canal boat to take a malposition when the tide left it, so that one half of the width of the boat rested on the bank of this stream, while the other half was over the stream to the aft side, and the boat shifted, and leaned over to that side, and was so injured that it was not worth repairing. *Held*, that the injury was caused by the perils of the sea, within the conditions of a policy of marine insurance, and entitled the owner to recover the loss.

Action by Thomas J. McNally against the Insurance Company of North America on a marine policy.    Judgment for plaintiff.

Hasbrouck & Gill, for plaintiff.
Black & Kneeland, for defendant.

BETTS, J.    This is an action brought on a marine insurance policy.    The plaintiff was the owner of the canal boat A. & G. Rathgeber, which was insured by the defendant.    The boat was subsequently wrecked.    The defense is that the boat was injured and sunk by natural wear and tear, and not by the perils of the sea or any of the perils insured against by the policy.    The facts are substantially as follows:    The boat was insured for general freighting business in the navigation of certain waters in and about the city of New York.    On or about the 18th day of October, 1898, the following indorsement was made by the defendant, and attached to the policy of insurance:    "Canal boat A. & G. Rathgeber.    Privilege is hereby granted the above-named boat to make one trip to Glen Cove Bay and return, with privilege to discharge cargo at Mamaroneck, New York."    The plaintiff, with his boat, secured a cargo of sand at Glen Cove Bay, and returned to Mamaroneck, reaching there about 4 o'clock in the afternoon, and the boat was made fast to the dock or wharf at that place.    Mamaroneck is a tidal harbor.    A portion of the cargo of sand was taken off that night, work thereon being continued until about 6 o'clock.    At about 6 o'clock the plaintiff left his boat, returned again about 10 o'clock, and went to bed on the boat.    At that time the boat had taken the bottom on the falling of the tide.    At about 12 o'clock he heard the boat creaking, but did not arise, and about 6 o'clock in the morning found that the boat was full of water.    The boat

remained on the bottom until her cargo was discharged, and was then raised, and taken to Hoboken or Jersey City, where it still lies, a wreck. The testimony of the plaintiff, which is not contradicted, is that at the dock at Mamaroneck, and about eight feet therefrom, there was a little gully about six feet wide, which had a running stream of water in it all the time, about three feet deep, no matter how low the tide was. After the tide went out, one half of the boat in width was on the bank of this stream alongside the wharf, and the other half was over the stream on the aft side. The result of the tide leaving the boat was that the boat took the bottom in a malposition, the sand shifted to the aft side, and the boat shifted, and leaned over to that side, and was injured so that it was not worth repairing. The plaintiff, who was in charge of his own boat, had never been at Mamaroneck before. He knew, however, that it was a tidal harbor, but did not know of the existence of this small stream of water near the dock, nor anything about the condition of the bottom upon which the boat would rest. The testimony is that the boat had been recently repaired, and was seaworthy. There is no testimony tending to show unseaworthiness on her part.

The question before me is whether the loss in the manner generally described above is a loss by one of the perils insured against. The defendant claims that it is not; that a boat entering a tidal harbor expects to take the bottom, and any damage that results therefrom is the natural wear and tear of the boat, unless some storm, gale of wind, or some fortuitous accident intervene. While the plaintiff concedes the general rule to be as claimed by the defendant, he yet claims that the taking of the ground by the boat in the manner described was such an accident as brought it within the conditions of the policy. I think the contention of the plaintiff is right, and that the taking of the bottom in this tidal harbor, in the manner taken by this boat, was a loss within the perils insured against by this policy. It was held in the case of Potter v. Insurance Co., by Judge Story, in 19 Fed. Cas. 1186, that the underwriters on the common policy of insurance are liable for all accidents arising from all extraordinary circumstances, and not from the inherent weakness of the vessel. That was a case in which the brig Benjamin Ruggles, from New York, was taking a cargo at the harbor of Newport, in England, which was a dry or tidal harbor, the tide rising and falling about 30 feet. The bottom at the wharf consisted of soft mud, of several feet in thickness, resting on a stony bottom, commonly called "shingles." After lying there several days, it was found that the brig had sprung aleak, and was damaged, and the cause for the leakage or damage was not clearly defined. The boat was repaired, and proceeded on her voyage, and some time after an action was brought against the insurance company for damages sustained there. The insurance company there, as here, insisted that if the boat was damaged at that place it was the ordinary wear and tear to be expected of the boat taking the bottom in a tidal harbor. The surveyors called to examine that boat reported the nature of her damage, and that it was "sustained by the said vessel lying badly on the ground." The court held:

"My opinion, upon a full survey of the evidence, is that the loss is not attributable to any inherent weakness of the vessel, but is attributable to other extraneous and extraordinary causes, such as striking some hard substance, or malposition, or bad taking of the ground, or overlaying the dock. If attributable to any such extraneous and extraordinary cause, taking effect by reason of the ebbing of the tide, it is, in my judgment, a loss by perils of the sea, for which the underwriters are responsible."

It will be noted that this case is not so strong as the one at bar, for the reason that the court does not undertake to say, nor does the evidence disclose, what particular cause of several causes did the injury; while in this case it is apparent that the damage to the boat was done by the malposition in which she took the ground, occasioned by the gully or stream of water flowing in the peculiar position that it did near the dock or wharf at Mamaroneck. This case (Potter v. Insurance Co.) is followed in Hagar v. Insurance Co., 59 Me. 463, the court holding that:

"All ships moored in tide harbors are liable, as the tide ebbs, to take the ground in a malposition, or to strike their bottoms against some hard substance, and to be thereby injured. This danger constitutes one of the perils of the sea, for which underwriters are responsible."

The principal case (Potter v. Insurance Co.) is also quoted with approval in Pennsylvania R. Co. v. Manheim Ins. Co. (D. C.) 56 Fed. 301. In that case a lighter in the employment of the plaintiff grounded upon a shoal in a slip at Jersey City, striking, in taking the ground, a log the existence of which was unknown, which stove a hole in the bottom of the lighter, from which subsequently the lighter careened over, dumping part of her cargo overboard. There the insurance company claimed, among other defenses, that the loss did not arise through any peril of the sea covered by the insurance policy, and the court held:

"The first ground of defense evidently cannot be sustained. The loss was damage by seawater, arising, not in the ordinary course of grounding in the slip, but from careening consequent on the settling of the boat upon a dangerous log, not before known. This was an accident, such as occasionally arises in the ordinary handling of lighters in the harbor in course of transit, and in such transit as was contemplated both by the policy and by the bill of lading. Upon a loss happening in that way, it makes no difference, as between the insurer and the insured, whether the original grounding and settling on the log was by some one's negligence, or without negligence. The immediate and proximate cause of the loss, as between the insurer and insured, was a sea peril, covered by the policy."

See, also, Petrie v. Insurance Co., 132 N. Y. 137, 30 N. E. 380, where a canal boat took the ground when the tide went out, and was injured. The court held that the loss was within the perils insured against.

An English case of Magnus v. Buttemer, 11 C. B. 876, is claimed by the defendant to be authority for holding that this loss here is not within the perils insured against. I think that case is easily distinguishable from the one at bar. There the vessel was moored at a beach which was hard, shingly, and steep. The vessel was there several days, and there was no accidental or unforeseen taking of the ground upon the tide receding, and the boat at each time floated upon the return of the tide. In that case the court held

that whatever damage was sustained by the boat was the natural wear and tear. In any event, this case was an English case, and the rule does not seem to have been carried in this country to the extent claimed by the defendant here.

I conclude that this was a loss within the policy, and findings may be prepared accordingly.