**FREDERICK STARR CONTRACTING COMPANY, Plaintiff-Appellee,**

v.

**AETNA INSURANCE COMPANY, Defendant-Appellant.**

**No. 72, Docket 26087.**

United States Court of Appeals Second Circuit.

Argued Dec. 5, 1960.

Decided Dec. 30, 1960.

George B. Warburton, of Hill, Rivkins, Middleton, Louis & Warburton, New York City, for defendant-appellant.

Christopher E. Heckman, of Foley & Martin, New York City, for plaintiff-appellee.

Before CLARK, WATERMAN, and FRIENDLY, Circuit Judges.

CLARK, Circuit Judge.

Defendant, Aetna Insurance Company, appeals from a judgment for plaintiff insured, Frederick Starr Contracting Company, in an action to recover an amount due under a policy of marine insurance for damage to plaintiff's scow, Fred Starr No. 45.

On May 13, 1957, defendant issued the policy in suit insuring a number of plaintiff's vessels, including this scow, in the following traditional language:

"Touching the Adventures and Perils which we, the said Under-

writers, are contented to bear and take upon us, they are of the Seas, * * * and of all other like Perils, Losses and Misfortunes that have or shall come to the Hurt, Detriment or Damage of the said Vessel, &c., or any part thereof; excepting, however, such of the foregoing Perils as may be excluded by provisions elsewhere in the Policy or by endorsement."

There followed later an Inchmaree clause:

"This insurance also specially to cover (subject to the deductible Average Warranty of $1,000.00) loss of or damage to the subject matter insured directly caused by the following:—

"Accidents in loading, discharging or handling cargo, or in bunkering;

  *   *   *   *   *   *

"Negligence of Charterers and/or Repairers, other than an Assured, Master, Mariners, Engineers or Pilots; Provided such loss or damage has not resulted from want of due diligence by the Assured, the Owners or Managers of the Vessel, or any of them. Masters, Mates, Engineers, Pilots or Crew not to be considered as part owners within the meaning of this clause should they hold shares in the Vessel."

Pursuant to a charter agreement between plaintiff and N. Ryan & Company, the Fred Starr No. 45 was delivered in seaworthy condition to the Ryan dock at Great Neck, Long Island, on the morning of January 1, 1958. At about 8:00 a. m. the following day Ryan's employees began to load it with sand and gravel. When low tide arrived at 1:00 or 2:00 in the afternoon, the partly loaded vessel was resting on the bottom, with the starboard side next the dock higher than the other side. Between 2:00 and 3:00 p. m. the scow's captain made soundings with a long pole between it and the dock, and determined that it was lying on a soft bottom. The loading of the listing vessel continued until 3:00 or 3:30,

when the job was completed. At about 4:30, when the tide was rising, the captain discovered that the ship bottom was bulging and leaking, and that a couple of seams were open. The bottom of the sea in that area was generally soft, and scows customarily took the ground and listed at low tide safely while being loaded. But as a result of the washing of sand and gravel by Ryan near the loading berth, a runoff of water into the berth in front of the pier had been permitted to build up a hard mound. The striking of the vessel against this hard uneven bottom caused the damage for which plaintiff is now seeking indemnity.

■■ We think the damage to the scow resulted from a peril of the sea within the meaning of the policy. During the nineteenth century the American authorities clearly established that "perils of the sea" include damage from grounding during an ebb tide, so long as the damage is not the foreseeably inevitable result of letting the ship take ground. An early and often cited case to this effect is Potter v. Suffolk Ins. Co., C.C.D.Mass.1835, 19 Fed.Cas. pages 1186, 1188, No. 11,339, where Justice Story granted recovery upon such a policy when a ship was damaged in the course of loading by a grounding at low tide. The bottom of the wharf where the ship lay was, as here, generally composed of soft mud. Justice Story observed that "in the ordinary course of taking the ground in this harbor, or at this wharf, the present loss would not have occurred," and concluded: " * * * for the underwriters are responsible for all accidents of this sort occasioned by the recess of the tide, where they arise from extraordinary and extraneous circumstances, and not from such inherent weakness [of the vessel itself]. Striking on a hard substance would be such an extraordinary accident. But it is only one instance, illustrative of the rule, and not itself of the essence of the rule. Any other accident, not in the usual course of grounding on the recess of the tide, but arising from some unexpected and unusual cause, would be equally within the rule."

This principle was stated more broadly in Hagar v. New England Mutual Marine Ins. Co., 59 Me. 460, 463, as follows: "All ships moored in tide-harbors are liable, as the tide ebbs, to take the ground in a malposition or to strike their bottom against some hard substance, and to be thereby injured. This danger constitutes one of the perils of the sea for which underwriters are responsible." In accord is Petrie v. Phenix Ins. Co., 132 N.Y. 137, 30 N.E. 380. See also Pennsylvania R. Co. v. Manheim Ins. Co., D.C.S.D.N.Y., 56 F. 301, where the ship, in grounding on the receding of the tide, struck a log with projecting spikes; and McNally v. Insurance Co. of North America, 31 Misc. 61, 63 N.Y.S. 125, where a boat took ground on a receding tide in a malposition caused by the peculiar flow of a nearby stream.

■ No different result is required by Magnus v. Buttemer, 11 C.B. 876 (1852), where a boat moored for three days in the tidal waters of a hard shingly beach suffered damage as a result of repeated groundings on the hard sea bottom. The court there held that, if a shipowner sets a boat out where it will foreseeably and necessarily take successive groundings on a bottom known to be hard, any damage resulting will be deemed the result of ordinary wear and tear, rather than of a peril of the sea. The rule as thus stated has not been applied to other situations by the American courts. See McNally v. Insurance Co. of North America, supra, 31 Misc. 61, 63 N.Y.S. 125. The present case, where the scow was grounded only once on a bottom ordinarily found to be soft, falls within the general American rule above stated. That the unexpected hard mound may have resulted from Ryan's negligence—an issue we do not decide—does not alter this conclusion. "Upon a loss happening in that way, it makes no difference, as between the insurer and the insured, whether the original grounding * * * was by some one's negligence, or with-

out negligence. The immediate and proximate cause of the loss as between the insurer and insured was a sea peril, covered by the policy." Pennsylvania R. Co. v. Manheim Ins. Co., supra, D.C.S.D. N.Y., 56 F. 301, 303.

■■ Since the loss is due to a peril of the sea, plaintiff is entitled to recover unless it has been guilty of willful misconduct. New York, N. H. & H. R. Co. v. Gray, 2 Cir., 240 F.2d 460, 464, certiorari denied 353 U.S. 966, 77 S.Ct. 1050, 1 L.Ed.2d 915. The provision that the extended coverage added by the Inchmaree clause is granted "Provided such loss or damage has not resulted from want of due diligence by the Assured, the Owners or Managers of the Vessel, or any of them" does not limit the coverage under the perils of the sea clause.

Defendant asserts that the plaintiff was guilty of willful misconduct in sending the scow for loading at the Ryan dock, because plaintiff's somewhat larger scow Adam Starr No. 50 had been injured in a similar manner at that dock on December 19, 1957. But from October 22, 1957, to December 31, 1957, plaintiff's scows had made twenty-three successful trips to the Ryan dock, at which they grounded and listed safely on the soft mud bottom during low tide. Eight of these trips were by the Fred Starr No. 45 itself, including three trips made after the accident of December 19, 1957, to the Adam Starr No. 50. In addition, there is no evidence that managerial personnel of the plaintiff had knowledge of the cause of the accident to the Adam Starr No. 50 at the time the Fred Starr No. 45 was dispatched to the Ryan dock on January 1, 1958. The district court's finding of lack of willful misconduct must be affirmed. Since only willful misconduct is a defense on the policy, we express no opinion on defendant's various allegations of negligence.

The present action, based on the policy issued to plaintiff on May 13, 1957, was still in effect on the date of the damage to the scow. On December 27, 1957, the policy was endorsed to add N. Ryan & Company as an assured. Defendant asserts that it would not have added Ryan as an assured if plaintiff had fulfilled its duty to make full disclosure of all relevant facts before procuring the endorsement. Even if these assertions are correct, they do not affect the validity of the May 13, 1957, policy issued to plaintiff, since the duty of full disclosure exists only to the execution of the contract. See Arnold on Marine Insurance § 576 (13th Ed.). We express no opinion on the issues whether the endorsement is valid or whether the defendant has any rights by way of subrogation against Ryan.

Judgment affirmed.