**PACIFIC INDEMNITY COMPANY, a corporation, Libelant,**

v.

**Hugh SUSSEX, T. M. Harmer and Eugene G. Hulett as United States Marshal for the District of Oregon, Respondents.**

**No. 66–59.**

United States District Court
D. Oregon.

March 2, 1967.

**866**

Kenneth Roberts, Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, Or., for libelant.

Gunther Krause, Portland, Or., for respondents.

---

## MEMORANDUM OPINION

von der Heydt, District Judge.

The Pacific Indemnity Company (Pacific) seeks a declaratory judgment of non-liability under a policy of hull insurance for the sinking of respondents' yacht, DUET. Pacific contends that the sinking was caused by DUET'S unseaworthiness and not by any peril of the sea covered by its policy. It also contends that if the policy does apply, respondents' recovery must be limited to $850 plus salvage costs, because respondents failed to take the reasonable steps to minimize damages required by the policy's "sue and labor" clause.

Respondents Sussex and Harmer contend that the sinking of the DUET was caused by a peril of the sea, and that the loss is covered by the policy. Respondents also allege they acted reasonably to minimize damage to the vessel, and that the cost of repairing damage caused by the sinking exceeded the policy's $20,000 limit.

The evidence introduced at trial indicated respondents discovered the 46-foot sailing yacht, DUET, in Mazatlan, Mexico. After refurbishing, the vessel was sailed to Astoria, Oregon, where the United States Marshal impounded it pending foreclosure of a preferred ship's mortgage, which respondents had purchased from the original mortgagee. Respondents became owners of the vessel by reason of purchase at a marshal's sale.

The marshal had moved the DUET to Bart's Marina at Portland, Oregon, where it was moored in deep water in the Columbia River. When the marshal took custody of the vessel he was added as an insured under the policy which Pacific had issued on the DUET before the vessel left Mazatlan.

Sussex and Harmer both testified that they saw the DUET at Bart's Marina several weeks before it sank. At that time it was moored in deep water and it was noted to have a small hole in its starboard side twelve to fourteen inches above the water line.

Some time after respondents' visits, the DUET was transferred to a mooring nearer the shore. By mid-October the annual decline in the river level left only six feet of water at low tide at the DUET'S new moorage. The DUET draws more than seven feet at its keel. Each time the tide went out the DUET became grounded, and its mooring lines caused it to lean toward the dock which was on its starboard side. Low tides caused the vessel to lean enough so that water flowed through the hole in the hull, and the DUET sank at its mooring on October 17, 1965.

On October 18, a crew from Willamette Tug and Barge Company (Willamette) raised the DUET and towed it to Willamette's moorage. Willamette installed an automatic bilge pump and opened drawers and closets to allow them to dry. On October 19, respondent Sussex came to Portland to inspect the damage. He worked on the vessel himself, and instructed a Willamette employee to do whatever was necessary to dry the vessel. Sussex testified that two employees of Pacific were present when he authorized this work.

Sussex returned two days later accompanied by Harmer. Both testified

that the bilges were dry but that the cabin area below decks remained damp because water was trapped in the vessel's Celotex insulation. The Celotex could not be reached without ripping out much of the DUET's paneling, which they hoped to salvage by allowing it to dry slowly. Sussex and Harmer spent several days removing equipment and working to dry the vessel.

Pacific had the DUET surveyed on October 22 and 26, 1965, by surveyor Clark, who estimated damage caused by the sinking to be $850. A second surveyor, Newton, estimated damage to be $2,000, and recommended an $8,000 reserve for repairs incidental to sinking. Respondent's survey was performed by E. F. Weeks, United States Salvage Association, on November 29 and 30, 1965. Surveyor Weeks estimated the cost of necessary repairs to be $9,436, plus $604 to replace lost equipment. None of the estimates include $1,990 salvage costs, which Pacific concedes to be reasonable.

Respondent Sussex dry-docked the DUET and commenced extensive repairs on June 1, 1966. He asserts that as he worked he discovered additional hidden damage caused by the sinking that raised the cost of necessary repairs to $35,000.

The Court holds that a preponderance of the evidence indicates the DUET's sinking was caused by a peril of the sea, and that Pacific's policy insured against the loss.

Although water entered through the hole in the hull, the sinking was not the inevitable result because of the existence of the hole. In spite of the hole, the DUET remained afloat until low water grounded it and caused it to roll onto its starboard side. Thus, the sinking was "in the realm of the possibilities and not of the inevitabilities." Compania Transatlantica Centroamericana, S. A. v. Alliance Assurance Co., Ltd., 50 F.Supp. 986, 991 (S.D.N.Y.1943). In *Alliance*, a vessel filled with water and had to be beached to avoid sinking because a vapor escape valve stuck open, creating an unseaworthy condition. A small wave or slight list splashed water through the open valve and created a siphon in the vapor pipe which caused the ship to fill. The Court held that the loss was caused by a peril of the sea, at p. 991,

"the casualty was the result of a fortuitous entry of the sea water; * * it was an event which might and did happen, not one which must happen."

In Frederick Starr Contracting Company v. Aetna Insurance Company, 285 F.2d 106, 85 A.L.R.2d 441 (2d Cir. 1960), the Court held that the insurer's policy against perils of the sea covered damage to libellant's barge caused by striking a hard bottom at ebb tide. The Court quoted with approval Hagar v. New England Mutual Marine Ins. Co., 59 Me. 460, 463:

"All ships moored in tide-harbors are liable, as the tide ebbs, *to take the ground in a malposition* or to strike their bottom against some hard substance and to be thereby injured. This danger constitutes one of the perils of the sea for which the underwriters are responsible." (Emphasis added.)

Pacific cites several occasions where vessels sank at their moorings after water entered through openings below or slightly above the water line. Coburn v. Utah Home Fire Insurance Co., 233 Or. 20, 375 P.2d 1022 (1962), Yacht ROWDY, D.C., 177 F.Supp. 932, and Founders Insurance Co. v. Rogers, 305 F.2d 944, 98 A.L.R.2d 945 (9th Cir. 1962). These are not in point, as in each the issue was whether the opening was caused by a peril of the sea, not whether the loss was inevitable once the opening existed. Similarly, the Court held in Long Dock Mills and Elevator Co. v. Mannheim Ins. Co., 116 F. 886 (D.S.N.Y.1902) that libellant's barge sank solely because of its unseaworthiness, which violated an implied warranty of seaworthiness in the insurance agreement made with respondents.

Each party asserts that the other carried the burden of proof. Since, in any event, respondents have carried the burden by showing by a preponderance of the evidence that the DUET'S sinking

was caused by a peril of the sea, the Court need not decide this issue.

The surveyors' reports differ widely in estimates of damage caused by the DUET'S sinking. Although surveyor Weeks did not inspect the DUET until six weeks after the sinking, his conclusions are found to be more convincing and reasonable than those of surveyors Clark and Newton. The evidence does not persuade the Court that any method of heat application could have prevented the delamination of non-marine plywood that had remained submerged for twenty-four hours.

A preponderance of the evidence indicates that Sussex and Harmer acted reasonably. Sussex inspected the DUET at Willamette's mooring the day after it was raised. He worked on the vessel himself and told Willamette to do whatever was necessary to dry the ship properly. Two days later Sussex returned with Harmer, and both spent several days working on the vessel.

As provided by Rule 52(a), Federal Rules of Civil Procedure, the Court enters the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. The yacht DUET sank at her moorings at Bart's Wharf and Marina, Portland, Oregon, on October 17, 1965.
2. Several circumstances combined to cause the sinking:

 (a) Moving the DUET to a mooring in shallow water;

 (b) Substantially lowered water level in the Columbia River in October;

 (c) Mooring the DUET with her starboard side next to the dock;

 (d) A hole approximately 2½ inches in diameter in the starboard side some twelve to fourteen inches above the water line.

3. During low tide the vessel grounded. Its mooring lines caused it to lean to starboard toward the dock. Water entered the vessel through the hole in the hull and subsequently through normal openings in the deck.

4. Most of the cabin area below decks flooded with river water containing oil and silt.

5. The main cabin was partially flooded, with water damage to instrument panel, radio and direction finder.

6. The DUET sank on a Sunday and remained submerged for approximately twenty-four hours, although an agent of the owners promptly arranged for salvage.

7. The ceilings, closets, cabinets, and drawers in the flooded cabin area were constructed primarily of non-marine plywood, which twenty-four hours of submersion caused to warp, buckle and become unglued.

8. Cushions, seating, blankets, life preservers and mattresses in the flooded cabin area were severely damaged by oil and silt and had to be replaced.

9. The fuel and water tanks, stove, connecting lines and bilges were flooded with water containing oil and silt and had to be cleaned.

10. The electric wiring had to be dried, inspected and tested.

11. The engine was flooded, requiring draining, cleaning and subsequent repairs.

12. Marine batteries and fire extinguishers were damaged.

13. Oil and silt were deposited on the interior hull, requiring cleaning.

14. Instruments, controls and equipment in the main cabin were flooded, necessitating inspection and replacement.

15. A number of books were destroyed.

16. Damage occurred to the starboard bulwark, bulwark cap and stanchions aft of midships, requiring repair and replacement.

17. Respondents Sussex and Harmer acted as reasonable owners by arranging for prompt salvage, working themselves on the vessel, and requesting Willamette to do whatever necessary to insure proper drying.

18. Salvage costs of $1990 are reasonable.

## CONCLUSIONS OF LAW

██ 1. The sinking of the DUET was caused by a peril of the sea.

2. Pacific Indemnity is liable on its policy to respondents for $7,811 in damages to the DUET proximately caused by her sinking, as set forth in Appendix "A" attached hereto.

Since the Court has determined Pacific to be liable under the perils clause of its policy, the Inchmaree clause has not been considered.

This memorandum will constitute Findings of Fact and Conclusions of Law as provided by Rule 52(a), Federal Rules of Civil Procedure. Respondents' counsel may prepare an appropriate form of judgment.

## APPENDIX A

| | | |
|---|---|---|
| 1. (a) | Repair of engine ($230 plus ½ of $750) | $ 605.00 |
| (b) | Cleaning fuel and water tanks, lines | 50.00 |
| (c) | Dry and test instrument panel | 85.00 |
| (d) | Radio | 300.00 |
| (e) | Direction finder | 450.00 |
| (f) | Wiring | 50.00 |
| (g) | Marine 12v. batteries | 150.00 |
| (h) | Mattresses | 150.00 |
| (i) | Stove and lines | 50.00 |
| (j) | Ceilings, drawers, cabinets, cushions, seating, doors | 2300.00 |
| (k) | Sand blast and paint interior hull | 1100.00 |
| (l) | Clean bilges | 75.00 |
| (m) | Fire extinguishers | 40.00 |
| (n) | Life jackets | 66.00 |
| (o) | Bulwark repair | 150.00 |
| (p) | Mahogany bulwark cap | 75.00 |
| (q) | Stanchions (3) | 15.00 |
| (r) | Loss of books and miscellaneous equipment | 100.00 |
| (s) | Loss of fuel in tanks | 10.00 |
| 2. | Salvage | 1990.00 |
| | Total award: | $7811.00 |