FOUNDERS' INSURANCE COMPANY, Appellant and Cross-Appellee,

v.

H. J. ROGERS and R. G. Rogers, Appellees and Cross-Appellants.

No. 17281.

United States Court of Appeals Ninth Circuit.

July 10, 1962.

McCutchen, Black, Harnagel & Shea, Philip K. Verleger, and Howard J. Privett, Los Angeles, Cal., for appellant.

Richard G. Harris, Los Angeles, Cal., for appellee.

Before CHAMBERS, BARNES and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

Before us are cross-appeals from a final decree in admiralty of the District Court. For convenience, we will hereafter refer to Founders' Insurance Company, appellant and cross-appellee, as "Insurance Company," and H. J. Rogers and R. G. Rogers, appellees and cross-appellants, as the "boat owners."

The final decree adjudged that the boat owners recover from the Insurance Company, which had issued to the boat owners a policy of marine insurance covering a small boat called the Adequate, the sum of $3500.00 for damages sustained when the boat sank at its slip.

Jurisdiction of the District Court was invoked under the provisions of the constitutional grant of admiralty and maritime jurisdiction (Article 3, Section 2 of the Constitution of the United States), and Title 28 U.S.C.A. § 1333(1). This Court's jurisdiction to review rests upon Title 28 U.S.C.A. §§ 1291 and 1294.

The boat owners predicated their right to recover upon either of two provisions of the insurance contract. One of these provisions, referred to as the "perils" clause provides for coverage in the event of a loss caused by certain specified perils, including the "perils of the seas." The pertinent portion of this provision is as follows:

"This insurance shall apply to loss or damage resulting from perils of the seas, fire, assailing thieves (meaning only theft with visible evidence of forcible entry or removal), theft of the insured vessel, jettisons, barratry of the Master and Mariners, aircraft (including articles falling therefrom), collision, and all other like perils, losses, or misfortunes."

The policy issued has an "English Law" clause, which provides "This insurance is subject to English Law and Usage."

The other provision of the policy of insurance is the "Inchmaree" clause, which in pertinent part provides:

"E. Inchmaree Clause (negligence, latent defect) * * * This insurance shall apply to loss or damage to the vessel, its equipment or machinery directly caused by:

* * * * * *

"4. Negligence of Master, mariners, engineers or pilots; provided such loss or damage has not resulted from want of due diligence by the Assured, the owners of the vessel, or any of them, or by the Manager. Within the meaning of this clause the 'assured,' the 'owners' or 'Managers' shall not be considered as 'Masters,' 'mariners,' 'engineers' or 'pilots.' "

This marks the second appearance of this case in this Court. See Founders' Insurance Company v. Rogers, 281 F.2d 332 (9th Cir.1960) wherein the facts of the case are fully set forth. On the first

appeal we vacated the final decree in favor of the boat owners and remanded the cause to the District Court for further proceedings consistent with the views expressed in the opinion, including the taking of additional evidence, if necessary, and the making of appropriate findings and conclusions and the entry of a decree based thereon.

Before proceeding further, it is necessary to re-state certain salient facts which appear in our opinion on the first appeal. The boat owners purchased the Adequate in 1955 and employed one Smith as Master of the vessel. As Master, Smith had authority to make any and all necessary repairs to the boat, although he usually mentioned major repairs to the boat owners. The boat was used primarily for week-end fishing trips in the summer. The boat owners relied completely on Smith for maintenance and operation of the boat. During the summer of 1956 one of the exhaust lines running from the exhaust manifold to the muffler blew out, and Smith at that time told the boat owners of that fact. At no time, however, did Smith inform the boat owners that the exhaust line from the muffler to the transom was thin or in any sort of danger or in need of replacement. Smith at that time decided to eventually replace the copper exhaust lines running from the muffler to the transom with neoprene hose, but this was not done prior to the sinking. On or about Labor Day of 1956, the vessel was tied up for the winter, stern out, in a slip at a private pier in front of the boat owners' home at Newport Beach, California, and was not taken out again in the intervening four months prior to the sinking.

Following the first trial, the District Court found, among other facts, as follows:

"9. That Charles Smith was Master of the Adequate, and it was his duty to operate and maintain her, after Labor Day, 1956, to the same extent as prior thereto.

"10. That said Charles Smith was negligent while he was the Master of the Adequate: (a) in having failed to inspect the exhaust lines to determine whether they required replacement due to deterioration from sulphuric acid corrosion, and in having failed to advise libelant, H. J. Rogers, of the need for conducting such an inspection; (b) in having failed to take steps which would have prevented the entry of water into the exhaust lines of the Adequate after Labor Day, 1956, and in having failed to advise libelant, H. J. Rogers, of the need for so protecting the Adequate; and (c) in having failed to inspect the Adequate with either sufficient frequency or thoroughness after Labor Day, 1956, and in having failed to advise libelant, H. J. Rogers, of the frequency or thoroughness of the inspections required.

"11. That said negligence directly and proximately caused said sinking.

"12. That there was no want of due diligence on the part of libelants and libelant, H. J. Rogers, at no time held himself out as an experienced mariner, and at all times, reasonably and without any negligence on his part, completely relied upon Charles Smith to operate, maintain, and act as Master of the Adequate."

There was no finding of fact that the sinking of the Adequate was in any manner caused or contributed to by any of the perils insured against under the "perils" clause.

The final decree on the first appeal was vacated and the cause remanded to the District Court because the finding of the trial Court that Smith was Master of the vessel after Labor Day, 1956, was without evidentiary support and clearly erroneous, the result of which was that there was no finding of fact as to the presence or absence of due diligence on the part of the boat owners after Labor Day, 1956, during the period when the Adequate was without a master, and because of the failure of the District Court to make a finding of fact as to whether or not the loss or damages resulted from any of the

perils insured against under the "perils" clause of the insurance contract.

On remand, no additional evidence was received from either party. The District Court found, among other facts, as follows:

"9. That libelant is not entitled to recover from respondent under Paragraph 'D' of insurance policy No. Y 8712, commonly referred to as the Perils Clause.

"10. That Charles Smith was the Master of the ADEQUATE within the meaning of the Inchmaree Clause from the commencement of his employment up to and including the winterizing of the vessel on or about Labor Day, 1956.

"11. That Charles Smith as Master was negligent in the winterizing of the vessel, and that he as Master was negligent in the performance of his duties as Master from at least sometime in the early part of the summer of 1956.

"12. That the negligent acts or omissions of Smith as Master were operative at the time the vessel sank on January 9, 1957, and directly and proximately caused the vessel to sink on January 9, 1957.

"13. There was no want of due diligence on the part of libelants either before or after Labor Day, 1956.

"14. The damage to the ADEQUATE by reason of its sinking on January 9, 1957, is Thirty-five Hundred Dollars ($3500.00)."

Among its conclusions of law, the District Court concluded, in relevant part, as follows:

"1. That libelants are entitled to recover from respondent under Paragraph 'E' of insurance policy No. Y 8712, commonly referred to as the Inchmaree Clause, the sum of Thirty-five Hundred Dollars ($3500.00) * * *."

The Insurance Company appeals from the final decree entered in favor of the boat owners, and its statement of points on appeal and points on which it relies on this appeal are:

"1. Finding of Fact No. 12 is clearly erroneous insofar as it finds that the negligent acts of Smith as master on or before Labor Day 1956 directly and proximately caused the vessel to sink on January 9, 1957, in that it is contrary to the undisputed evidence.

"2. The court erred in failing to find as a matter of law that the negligence and carelessness of libelants in the period from Labor Day 1956 to the date of the sinking, January 9, 1957, was the direct and proximate cause of the sinking of the vessel.

"3. Finding of Fact No. 13 is clearly erroneous in that it is contrary to the undisputed evidence.

"4. The court erred in failing to find as a matter of law that the sinking of the ADEQUATE resulted from a want of due diligence on the part of libelants.

"5. The court committed substantial and prejudicial errors of law in rendering its judgment for libelants and against respondent on the theory that the loss complained of was within the coverage of the Inchmaree clause of the subject policy.

"6. The judgment of the court is not supported by the evidence."

The boat owners likewise appeal from the final decree, and their statement of points on appeal and points on which they rely on this appeal are:

"1. Finding of Fact No. 9 is clearly erroneous in that it is contrary to the undisputed evidence.

"2. The court erred in failing to find as a matter of law that the loss resulted from 'Perils of the Seas' under English Law and Usage.

"3. The court erred in failing to find as a matter of law that the loss resulted from 'Like Perils, Losses or Misfortunes' under English Law and Usage.

"4. The court committed substantial and prejudicial errors of law in finding that the loss complained of was not within the coverage of the 'Perils' clause of the subject policy.

"5. Finding of Fact No. 9 is not supported by the evidence."

We will first dispose of the cross-appeal of the boat owners.

The sole assignment of error relates to the finding of the District Court that the sinking of the boat was not within the "perils" clause. It is not disputed, as found by the District Court, that the sinking of the boat was caused by water entering the hull through holes in that portion of the starboard exhaust line extending from the muffler to the transom of the vessel; that said holes in the starboard exhaust line had existed for some time prior to the sinking and that a slight change in the vessel's trim allowed entry of the water into the hull through said holes; that Smith was the Master of the boat, within the meaning of the Inchmaree clause, from the commencement of his employment up to and including the winterizing of the vessel on or about Labor Day, 1956; that Smith as Master was negligent in the winterizing of the vessel, and that he as Master was negligent in the performance of his duties as Master from at least some time in the early part of the summer of 1956; and that the negligent acts or omissions of Smith as Master were operative at the time the vessel sank on January 9, 1957, and directly and proximately caused the vessel to sink on January 9, 1957. In the light of such findings and a review of the evidence in the case, we are unable to hold that the finding of fact of the District Court is clearly erroneous, nor did the District Court err in failing to find as a matter of law that the boat sank from "perils of the seas" under English Law and Usage.

We will now consider the appeal of the Insurance Company.

On the first appeal we stated:

"There is ample proof in the record to support the finding of fact that Smith was the master of the Adequate within the meaning of the Inchmaree clause from the commencement of his employment up to and including the winterizing of the vessel on or about Labor Day 1956. Furthermore, there is sufficient proof in the record to support the finding that Smith as master was negligent in the winterizing of the vessel, and that he as master was negligent in the performance of his duties as master from at least sometime in the early part of the summer of 1956. There is sufficient proof in the record that the negligent acts or omissions of Smith as master were operative at the time the vessel sank on January 9, 1957." Founders' Insurance Company v. Rogers, supra, 281 F.2d p. 339.

Since no additional evidence was received by the District Court following the remand, we reaffirm the statements above quoted. Our reaffirmation of the above quoted statements leaves open for review on this appeal only the finding of the District Court, No. 13, that there was no want of due diligence on the part of libelants either before or after Labor Day, 1956. It is not disputed that Smith was the Master of the boat within the meaning of the Inchmaree clause of the insurance contract from the commencement of his employment in 1955 up to and including the winterizing of the boat on or about Labor Day, 1956. The finding of fact of the District Court that there was no want of due diligence on the part of the boat owners up to and including the winterizing of the boat on or about Labor Day, 1956, finds support in the record and is not clearly erroneous. Is the finding of fact of the District Court that there was no want of due diligence on the part of the boat owners after the winterizing of the boat clearly errone-

ous? We believe not. In the first place, it was the duty of Smith, then Master of the boat, to see that the boat was properly winterized. The boat owners were "Sunday skippers" and admittedly knew nothing about the operation and maintenance of the boat. At no time did Smith inform the boat owners that the exhaust line from the muffler to the transom was thin or in any sort of danger or in need of replacement. In our view, there was no lack of due diligence on the part of the boat owners in relying upon the competence of Smith as Master in properly winterizing the boat. In retrospect, it appears that if Smith had placed wooden plugs in the exhaust ports, probably the boat would not have sunk. However "due diligence" must be viewed prospectively in measuring the conduct of the boat owners. "Due diligence" is also a relative term and what constitutes due diligence must be measured in the light of the facts and circumstances of the particular case which brings the term into question. In the instant case, the boat was a small pleasure craft used primarily for Sunday fishing during the summer months. Following the winterizing of the boat, Smith continued, not as Master but as a volunteer, to care for and inspect the boat until four days before it sank. The boat owners were aware of the fact of such inspections. During such period Smith never informed them and they had no knowledge that any repairs or replacements were required in the continued safe winterizing of the boat. In our view, the finding of the District Court that there was no want of due diligence on the part of the boat owners after the winterizing of the boat, is likewise not clearly erroneous.

The judgment of the District Court is affirmed.

On the first appeal we stated that taxation of the costs of such appeal is postponed pending action of the District Court on such remand. We now determine that the Insurance Company is entitled to recover costs of the first appeal, and that the boat owners are entitled to recover costs of this appeal.